## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JARACUS COPES, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-2306 |
| THE JOHNS HOPKINS UNIVERSITY APPLIED PHYSICS LABORATORY, LLC, | * * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

In this employment discrimination case, Plaintiff Jaracus Copes ("Plaintiff" or "Copes") raises federal and state discrimination claims against Defendant Johns Hopkins University Applied Physics Laboratory ("Defendant" or "APL"), where he worked as a Senior Professional I/Instructional Designer between January 2017 and January 2021.[1] (ECF No. 22 ¶¶ 11, 12.) On August 23, 2023, Copes initiated this action in a four-count Complaint alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Count I); race discrimination in violation of the Maryland Fair Employment Practices Act ("MFEPA") (Count II); retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Count III); and retaliation in violation of MFEPA (Count IV). (ECF No. 1.) APL filed a Motion to Dismiss (ECF No. 12), which this Court granted on July 16, 2024. (ECF No. 21.) In granting that motion, this Court dismissed with prejudice Copes's

---

[1] This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a).

original Counts III and IV alleging retaliation, as those claims failed to exhaust administrative remedies. (ECF No. 21). The race discrimination claims in original Counts I and II were dismissed without prejudice with leave to amend. (*Id.*) On July 31, 2024,[2] Copes filed a First Amended Complaint (ECF No. 22), in which he again alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Count I) and race discrimination in violation of MFEPA (Count II).[3] (ECF No. 22.)

Presently pending before this Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 23.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED, and Plaintiff's claims are now DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's First Amended Complaint and accepted as true for the purpose of Defendant's Motion to Dismiss.

In 2017, APL hired Copes as a Senior Professional I/Instructional Designer to write

---

[2] Pursuant to the Court's Memorandum Order dismissing Copes's original Complaint, July 31, 2024, was the fifteenth and final day to timely file an Amended Complaint. (ECF No. 21 at 12.)

[3] As explained below, the Court construes Count I of Copes's First Amended Complaint, consistent with its language, to raise a claim under 42 U.S.C. § 1981 rather than 42 U.S.C. § 1983.

curriculum, train instructors, select students, and manage the program for its Science, Technology, Engineering, and Math ("STEM") Academy. (ECF No. 22 ¶¶ 11–13.) Copes is an African American man, and his direct supervisor, Dwight Carr ("Carr"), was a black man. (*Id.* ¶¶ 10, 14.) Copes alleges that, other than Carr, he was APL's only black employee in a Senior Professional position. (*Id.* ¶ 17.) According to Copes, he endured racial discrimination throughout his employment at APL, which ended in his constructive discharge. (*Id.* ¶¶ 50-54, 65.) Specifically, Copes alleges that Carr gave him more work than his peers, denied him promotion, and harassed him because of his race. (*Id.* ¶¶ 19-20, 30, 32, 56-57.)

First, Copes alleges that APL required him to oversee three programs without sufficient resources while similarly situated, non-African American colleagues oversaw only one program. (*Id.* ¶¶ 19–20, 23, 26.) Copes alleges that his responsibility for three programs required him to work longer hours to meet his job expectations, but Carr refused his requests for an adjusted workload. (*Id.* ¶¶ 20-22, 24, 25.) According to Copes, Carr also denied his requests for assistance despite providing additional support to non-African American colleagues. (*Id.* ¶¶ 24-27.) Copes alleges that at one Maryland MESA day,[4] APL provided an administrative assistant to work with his white co-worker, but he received no such support. (*Id.* ¶ 29.) Copes alleges that, notwithstanding these difficulties, he successfully performed his duties, and APL provided signed Records of Achievement and Accomplishments and increased his salary each year between 2017 and 2020. (*Id.* ¶¶ 30, 31.)

---

[4] Copes does not describe what occurs at a Maryland MESA day or how the Maryland MESA day related to his job duties. According to APL's website, "Maryland MESA (Math, Engineering, Science Achievement) is an exciting and engaging after-school program for students in grades 3-12 designed to spark their interest in STEM education and STEM careers." *See Maryland Mesa*, JOHNS HOPKINS APPLIED PHYSICS LAB., https://secwww.jhuapl.edu/stem/mesa.

Next, Copes alleges that APL repeatedly denied his requests for promotion. (*Id.* ¶¶ 30, 32, 34.) According to Copes, he told Carr that he sought a promotion to Senior Professional II in 2019, but his request was denied.[5] (*Id.* ¶¶ 32, 34, 35.) Copes informed Carr of his continued desire for promotion on March 9, 2020, and Carr met with his own supervisor, Denise Hockensmith ("Hockensmith"), in September 2020 to discuss promotions.[6] (*Id.* ¶¶ 15, 35-36.) A month later, Carr and Hockensmith met with Copes to address performance issues and inform him that he would not be promoted. (*Id.* ¶¶ 37-38.) At this meeting, Carr stated that Copes was an ineffective leader because he missed deadlines and did not communicate with parents of students in APL's STEM Academy. (*Id.* ¶ 39.) Copes alleges that he provided Carr proof of his communications with parents and compliance with deadlines, but he was again denied promotion in December 2020. (*Id.* ¶¶ 40, 44.)

Finally, Copes alleges that Carr often criticized him in front of other staff but did not treat white employees in this manner. (*Id.* ¶¶ 56-57.) Copes allegedly asked Carr to extend the same professional courtesy to him that Carr gave to white colleagues, but Carr did not respond to his request. (*Id.* ¶ 42.) Copes alleges that he told Hockensmith in November 2020 that Carr had repeatedly spoken to him in a demeaning manner. (*Id.* ¶ 41.) According to Copes, Hockensmith instructed him to contact APL's Equal Employment Opportunity ("EEO") officer. (*Id.* ¶¶ 42-43.) Copes alleges that in December 2020 Carr pretextually placed him on an Individual Improvement Plan ("IIP"). (*Id.* ¶¶ 44, 63.) Copes alleges that the IIP imposed

---

[5] Copes alleges that APL frequently promotes employees from Senior Professional I to Senior Professional II upon recommendation of the employee's direct supervisor without requiring the employee to formally apply for the promotion. (ECF No. 22 ¶ 33.)
[6] Hockensmith is a white female. (ECF No. 22 ¶ 15.)

new responsibilities that required him to work more than forty hours each week without additional compensation.  (*Id.* ¶¶ 44-45.)  That same month, Copes reported his hostile work environment to APL's EEO officer.  (*Id.* ¶ 45.)  Copes alleges that his report resulted in greater discrimination and harassment from Carr.  (*Id.* ¶ 47.)

On January 29, 2021, Copes submitted a Notice of Voluntary Termination and filed a Complaint of Discrimination with APL's EEO office.  (*Id.* ¶ 49.)  He alleges that APL replaced him with a less qualified white female and, in 2021, promoted a less qualified white man to Senior Professional II.  (*Id.* ¶¶ 49, 50.)  Before initiating this action, Copes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"),[7] alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.  (*Id.* ¶ 5.)  The EEOC issued him a Notice of Right to Sue on May 30, 2023.[8]  (*Id.* ¶ 7.)

On August 23, 2023, Copes filed his original Complaint in this action, which this Court dismissed on July 16, 2024.  (ECF No. 1; ECF No. 21.)  After Copes filed his First Amended Complaint (ECF No. 22), APL filed the instant Motion to Dismiss First Amended Complaint ("Defendant's Motion").  (ECF No. 23.)  Plaintiff responded in opposition (ECF No. 24), and Defendant has replied (ECF No. 25).  Defendant's Motion is ripe for review.

---

[7] Copes's charge with the EEOC specifically alleged only race discrimination and did not raise retaliation.  *See* (ECF No. 21 at 10) (dismissing retaliation claims with prejudice for failure to exhaust administrative remedies); (ECF No. 12-2 at 2).

[8] The EEOC only issues Notice of Right to Sue letters if it is unable to conclude that there is reasonable cause to believe discrimination occurred.  If the EEOC had concluded that there was reasonable cause to believe discrimination occurred, the parties would have received Letters of Determination.  *See What You Can Expect After a Charge is Filed*, U.S. EQUAL EMP. OPPORTUNITY COMM'N, https://www.eeoc.gov/employers/process.cfm.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

As explained below, Copes fails to plead facts sufficient to support his claims under Rule 12(b)(6). The Court addresses each of Copes's claims in turn.

### I.     Count I

#### a.  § 1981 Claim

Defendant argues that Copes's § 1981 claim should be dismissed because Copes has abandoned the claim or, alternatively, failed to plead the elements of a § 1981 claim. Although Copes's First Amended Complaint brings Count I under both Title VII and 42 U.S.C. § 1981, he does not oppose APL's motion to dismiss his § 1981 claim. (ECF No. 24 at 5.) Rather, in his Opposition, Copes argues that he brought Count I under Title VII and 42 U.S.C. § 1983. (*Id.* at 3, 5.) This assertion is inaccurate. Count I of Copes's First Amended Complaint raises only claims under § 1981 and Title VII. (ECF No. 22.) To the extent that Copes sought to raise a claim under § 1983, he should have included it in his First Amended Complaint.[9] Because Copes had the opportunity to amend his original Complaint to raise a § 1983 claim and declined to do so, this Court construes Count I of his First Amended Complaint, consistent with its language, to raise a claim under Title VII and § 1981 only. As this Court explained in its Memorandum Order dismissing Copes's original Complaint on July 16, 2024 (ECF No. 21), failure to respond to an opposing party's argument in a motion to dismiss constitutes waiver of that point. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772,

---

[9] Copes's original Complaint (ECF No. 1) also raised claims under Title VII and 42 U.S.C. § 1981. (ECF No. 1 at 8). In the Memorandum Order dismissing Copes's Complaint (ECF No. 21), this Court noted that Copes failed to respond to APL's motion to dismiss his § 1981 claims and, for that reason, the Court granted Defendant's motion as to those claims. (ECF No. 21 at 5 n.2.) Therefore, Copes was already on notice that his Complaint raised only a claim under § 1981 and not under § 1983.

777 (D. Md. 2010). Copes has failed to respond to APL's arguments as to his § 1981 claim and, therefore, has abandoned that claim. Accordingly, Copes's § 1981 claim in Count I is DISMISSED WITH PREJUDICE.

### b. Title VII Claim

In its Motion to Dismiss, APL argues that Copes's Title VII discrimination claim must be dismissed because he has failed to plead facts sufficient to allege racial discrimination. (ECF No. 25 at 14.) APL argues that Copes has failed to raise any specific allegations of discriminatory treatment, demonstrate that his job performance was satisfactory during his employment, or allege facts that would support constructive discharge. (*Id.* at 3, 14; ECF No. 23-1 at 12.) In response, Copes contends that he has sufficiently alleged a prima facie claim of discrimination under Title VII and the *McDonnell Douglas* burden shifting standard.[10] (ECF No. 24 at 5-8.) Specifically, Copes reiterates the allegations in his First Amended Complaint and argues that they support each element of racial discrimination under Title VII. (*Id.*) Copes also argues that the First Amended Complaint sufficiently alleges constructive discharge by pleading facts that show that a reasonable person in Copes's position would have felt compelled to resign. (*Id.* at 9.)

Copes appears to allege constructive discharge only as an adverse employment action within his Title VII race discrimination claim. (ECF No. 22 ¶ 68.) To the extent that Copes sought to raise an independent claim of constructive discharge under Title VII, such a claim

---

[10] Under the *McDonnell-Douglas* test, in an employment discrimination case under Title VII, the burden of production shifts to the defendant after the plaintiff has sufficiently alleged employment discrimination under Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-803 (1973). *McDonnell-Douglas* is not a pleading standard, however, and a plaintiff need not meet the elements of the *McDonnell Douglas* framework to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002).

would fail. To raise constructive discharge under Title VII, a plaintiff must allege "circumstances of discrimination so intolerable that a reasonable person would resign." *Green v. Brennan*, 578 U.S. 547, 560 (2016). As the U.S. Court of Appeals for the Fourth Circuit has explained, this standard requires more than "difficult or unpleasant working conditions and denial of management positions." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019). In this case, Copes has alleged that he was constructively discharged because he faced "constant harassment" by Carr, was placed on an Individual Improvement Plan, and was repeatedly denied promotion. (ECF No. 22 ¶¶ 49, 68, 71-72, 60, 63.) These facts are insufficient to show that APL's actions toward Copes were so intolerable that a reasonable person in his position would have felt compelled to resign. Therefore, to the extent that Copes intended to raise an independent claim of constructive discharge, that claim fails. This Court considers constructive discharge only as an alleged adverse employment action within Copes's Title VII discrimination claim.

Title VII of the Civil Rights Act of 1964 proscribes discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e 2(a)(1). A Title VII discrimination claim may allege either direct or circumstantial evidence of discrimination. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* To survive a motion to dismiss, however, an employment discrimination claim need not establish a prima facie case. *McCleary-*

*Evans v. Md. DOT*, 780 F.3d 582, 584 (4th Cir. 2015) (citing *Coleman*, 626 F.3d at 191); *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Rather, such a claim must allege facts "'that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 626 F.3d at 190). In other words, the facts alleged must "support a *reasonable inference* that the decisionmakers were motivated by bias." *McCleary-Evans*, 780 F.3d at 586.

As Chief Judge Russell of this Court has explained, courts consider the totality of the circumstances when evaluating alleged discriminatory conduct. *Hughley v. Marion*, Civ. No. GLR-22-1654, 2023 WL 5957185, at *6 (D. Md. Sept. 13, 2023). Therefore, as Judge Chasanow of this Court has noted, "[t]he allegation that an employer treated a Black employee more harshly than a similarly situated employee of another race may be sufficient to create [a] reasonable inference [that decisionmakers were motivated by bias], unless an 'obvious alternative explanation' makes it implausible that the differential treatment occurred because of race." *Renibe v. Univ. of Md., College Park*, Civ. No. DKC-22-0618, 2023 WL 2585664, at *7 (D. Md. Mar. 21, 2023) (quoting *McCleary-Evans*, 780 F.3d at 588) (internal citations omitted). Such an explanation may defeat a claim by making implausible any inference of discrimination motivated by bias. *See, e.g.*, *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) (rejecting Title VII discrimination claim where alternative explanation made plaintiff's claim of pretext implausible). Similarly, where the principal alleged discriminator is a member of the same protected class as the plaintiff, as is the situation in this case, racial discrimination is less plausible. *See Brown v. Haines*, 2024 WL 3540473, at *2 (E.D. Va. July 10, 2024); *see also Demesme*

*v. Montgomery Cnty. Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999), *aff'd*, 208 F.3d 208 (4th Cir. 2000) ("The fact that decision makers were of the same protected class suggests no discriminatory motivation.").

Here, Copes presents no direct evidence of discrimination and fails to present circumstantial evidence sufficient to raise a reasonable inference of racial discrimination under Title VII.[11]  Specifically, he fails to plead facts sufficient to allege differential treatment or adverse employment action.  As an initial matter, Dwight Carr—Copes's immediate supervisor and principal alleged discriminator—is also a Black man, which makes discrimination less likely.  *See, e.g.*, *Demesme*, 63 F. Supp. 2d at 683.  Moreover, Copes offers only the conclusory allegation that similarly situated, non-African American employees were not subject to the same harassment, scrutiny, standards, or expectations without providing any specific examples of such differential treatment.  Copes generally references the promotion of a white male colleague, Mr. Cartwright, and the provision of assistants to white colleagues at the Maryland MESA day, but he provides no detail regarding how he was similarly situated to such colleagues.  Nor does he specify how the Maryland MESA day related to his job duties or the job duties of the individuals who allegedly received more support that day.  The First Amended Complaint is devoid of detail about these comparators' positions, experience, or qualifications. It is not clear from Copes's First Amended Complaint that he and Cartwright even had the same supervisors.  Similarly, although Copes makes the conclusory allegation that he

---

[11] In his Opposition, Copes appears to concede that he raises no direct evidence of discrimination because he only addresses the sufficiency of his First Amended Complaint under the *McDonnell-Douglas* burden-shifting standard applied to claims raising circumstantial evidence of discrimination. (ECF No. 24 at 5-6.) As an African American man, Copes is a member of a protected class under Title VII and meets the first element of employment discrimination under the *McDonnell-Douglas* framework.  *See McDonnell Douglas*, 411 U.S. at 802.

experienced constant harassment by his supervisor, he does not provide any specific facts or details about the alleged harassment.

Rather, Copes provides facts that suggest an obvious alternative explanation: APL provided heightened scrutiny and standards because it had identified issues with Copes's performance and placed him on an Individual Improvement Plan. As Copes alleges in his First Amended Complaint, his supervisors raised issues of missed deadlines and poor communication two months before placing him on an Individual Improvement Plan ("IIP"). Copes's conclusory allegation that his placement on an IIP was pretextual and his supervisors' critiques were contradicted "by clear evidence" is not supported by any facts in his First Amended Complaint. Additionally, as the United States Court of Appeals for the Fourth Circuit has noted, consideration of pretext is inappropriate at the motion to dismiss stage, where the critical question is whether the employer's explanation renders the plaintiff's allegations implausible. *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (citing *Woods*, 855 F.3d at 649). Here, considering APL's repeated efforts—including meeting with him individually to discuss concerns and placing him on an IIP— to make Copes aware of performance concerns, his vague and conclusory allegations of discriminatory treatment are insufficient to raise a "reasonable inference that decisionmakers were motivated by bias." *McCleary-Evans*, 780 F.3d at 586.

Finally, Copes fails to allege an adverse employment action. As Magistrate Judge Quereshi of this Court has noted, "[a]n adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Aly v. Yellen*, Civ. No. 8:23-cv-01699-AAQ, 2024 WL 2053492, at *4 (D. Md. May 8, 2024) (quoting

*Holland v. Washington Homes, Inc.*, 487 F.3d 208, 2019 (4th Cir. 2007) (alteration in original)).

*See also Muldrow v. St. Louis*, 601 U.S. 346, 359 (2024) (explaining that a plaintiff in an employment discrimination action need only show "some injury respecting her employment terms or conditions"). As this Court has previously noted, "it may not substitute its own judgment in place of an employer's judgment." *Weil v. Sunrise Senior Living Mgmt., Inc.*, Civ. No. RDB-20-701, 2021 WL 57428383, at *8 (D. Md. Dec. 1, 2021) (citing *Witzke v. Pepsi Bottling Ventures LLC,* Civ. No. RDB-17-0651, 2018 WL 4491219, at *10 (D. Md. Sept. 19, 2018)). *See also Holland*, 487 F.3d at 217-18. Copes alleges two adverse employment actions: (1) denial of promotion, and (2) constructive discharge. (ECF No. 24 at 7.) As discussed above, Copes has failed to raise a reasonable inference that APL denied his promotion because of his race rather than the obvious alternative explanation—consistent with his supervisors' feedback and his placement on an IIP—that he was not satisfactorily performing his job duties.

Copes similarly fails to plead constructive discharge as an adverse employment action. To allege constructive discharge, a plaintiff must plead facts sufficient to show discrimination so intolerable that a reasonable person in his position would have felt forced to resign. *Chapman v. Oakland Living Ctr., Inc.*, 38 F.4th 222, 235 (4th Cir. 2022). That is, the plaintiff must allege that his employer's treatment of him exceeded "'ordinary' discrimination." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). "Critically, difficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019).

Here, Copes claims that he was constructively discharged because he was (1) passed over for promotion; (2) issued an improvement plan; and (3) subject to criticism, harassment, and demeaning tones from his supervisor. As explained above, Copes does not allege facts sufficient to contradict the obvious alternative explanation that he was denied promotion because of unsatisfactory job performance and placement on an IIP. Copes provides no details about any of the alleged harassment by his supervisor, who, as a Black man, is of the same protected class as Copes. He merely makes the conclusory allegations that he was subject to "constant harassment" and "demeaning tones" from Dwight Carr. Moreover, his allegation that he was issued an IIP after being individually advised of performance concerns suggests that APL sought to help him improve his performance. Such vague and conclusory allegations do not meet the stringent standard that a reasonable person in the same position would have felt compelled to resign. *Perkins*, 936 F.3d at 212.

Accordingly, Copes has failed to plead facts sufficient to raise a reasonable inference of discrimination under Title VII. Specifically, Copes fails to plead facts sufficient to overcome the obvious alternative explanation that APL declined to promote him and subjected him to greater scrutiny than his peers because it sought to help him improve his job performance to a satisfactory standard. Therefore, Copes's Title VII race discrimination claim (Count I) is DISMISSED WITH PREJUDICE.

## II.    Count II

Copes also alleges race discrimination under the Maryland Fair Employment Practices Act, MD. CODE ANN., STATE GOV'T, § 20-606, ("MFEPA"). MFEPA is Maryland's "[s]tate law analogue to the federal employment discrimination statutes." *Ensor v. Jenkins*, No. ELH-

20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021).  As such, courts analyze it under

the same standard applied to Title VII claims.  *See Jennings v. Frostburg State Univ.*, 679 F. Supp.

3d 240, 274 n.8 (D. Md. 2023) (collecting cases); *see also Barreto v. SGT, Inc.*, 826 Fed. App'x

267, 270-71 (4th Cir. 2020) (analyzing Title VII and MFEPA discrimination claims together

under Title VII framework).  Because Copes fails to state a claim for race discrimination under

Title VII, he also fails to state a claim for race discrimination under MFEPA.  Therefore,

Copes's MFEPA claim (Count II) is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 23) is

GRANTED, and Plaintiff's First Amended Complaint (ECF No. 22) is DISMISSED WITH

PREJUDICE.

A separate order follows.

/s/
_____
Richard D. Bennett
Dated: January 2d 2025                    United States Senior District Judge

15